OPINION
{¶ 1} Appellees/Cross-Appellants, Jeffrey and Antoinette Peltz, filed suit against Appellants/Cross-Appellees, Mark A. Moyer, Moyer Group and Merrill Lynch Co., Inc., in the Belmont County Court of Common Pleas alleging that Moyer guaranteed certain returns on their investment principal, which allegedly consisted of their life savings. Jeffrey Peltz claims he retired based on Moyer's promises.
 {¶ 2} The investments evidently fell far short of Appellees' expectations. In their complaint they alleged that Appellants fraudulently misled them by making promises about the returns on their investments; Appellants negligently misrepresented their abilities and induced Appellees to invest and lose assets and profits; Appellants were professionally negligent and breached their fiduciary duty; Appellants breached their contract with Appellees; and that the Moyer Group and Merrill Lynch were negligent in the hiring, retention, and supervision of Mark Moyer.
 {¶ 3} In response, Appellants filed a motion to dismiss, or in the alternative, a motion to stay the proceedings pending arbitration. The trial court did stay the case pending arbitration, but contrary to the parties' agreement ordered Appellants to pay the National Association of Securities Dealers, Inc. ("NASD") filing and arbitration fees. (February 15, 2006, Docket Entry.)
 {¶ 4} Appellants timely appealed the trial court's decision. They allege that the terms of the parties' contractual agreement should be enforced in full since it was never established that the arbitration clause was unconscionable. Appellees present one cross-assignment of error on appeal and claim that the arbitration agreement was unenforceable in total, or, in the alternative, that they were entitled to discovery *Page 2 
on the issue. For the following reasons, we find merit to Appellant's sole assignment of error on appeal and conclude that the parties' arbitration clause was not unconscionable. Thus, we must modify the trial court's decision and enforce the parties' contractual agreement, including the arbitration clause, in full. This matter is ordered to arbitration and Appellees are responsible for the initial arbitration fees pursuant to the agreement.
 {¶ 5} Appellants' sole assignment of error alleges,
 {¶ 6} "The trial court erred in ordering the Defendants/ Appellants to advance the Plaintiffs/ Appellees' NASD fees for filing and arbitration. Feb. 15, 2006, Docket Entry."
 {¶ 7} In Appellees' cross-assignment of error they claim,
 {¶ 8} "The trial court erred in concluding that the underlying arbitration agreement was enforceable and, further, in staying this case pending arbitration before the plaintiffs/appellees/cross-appellants had even taken discovery on the issue."
 {¶ 9} Before addressing the alleged unconscionability of the arbitration clause, the issue forming the basis for all parties' appeals, we must discuss Appellees' claim that they were entitled to discovery regarding the issue. This argument arises from confusion as to whether Appellants produced the correct version of the governing agreement to the trial court.
 {¶ 10} A trial court has broad discretion over the conduct of parties during discovery, and an appellate court will not reverse a discovery order absent an abuse *Page 3 
of discretion. Arnold v. Am. Natl. Red Cross (1994) 93 Ohio App.3d 564,639 N.E.2d 484.
 {¶ 11} As Appellees point out, the copy of the signed Merrill Lynch Client Relationship Agreement attached to Appellants' motion and originally submitted to the trial court referred to paragraph 11 of the agreement. It stated in part:
 {¶ 12} "BY SIGNING BELOW, I AGREE TO THE TERMS OF THE MERRILL LYNCHCLIENT RELATIONSHIP AGREEMENT ON THE REVERSE SIDE AND: * * *2. THAT IN ACCORDANCE WITH PARAGRAPH 11 OF THE CLIENT RELATIONSHIP AGREEMENT I AM AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES THAT MAY ARISE WITH YOU." (Aug. 3, 2004, Motion To Dismiss Or, In The Alternative To Stay Proceedings Pending Arbitration, Exh. 1.)
 {¶ 13} Appellants' representative indicated in his affidavit that this was a true and accurate copy of the agreement signed by Appellees. However, the terms and conditions attached to the submitted agreement did not contain paragraph 11. Appellees raised this discrepancy with the trial court.
 {¶ 14} In response, Appellants again submitted what they identified as the correct version of the Merrill Lynch Client Relationship Agreement governing the parties' investment relationship. This copy of the agreement was unsigned, but the language and contents of the signature page matches the previously submitted copy signed by Appellees. This version of the agreement contained the referenced paragraph 11, and it was authenticated as a true and accurate copy of the client *Page 4 
agreement Appellees signed. (Sept. 20, 2004, Brief in Opposition Plaintiffs Motion for Reconsideration, Exh. 1.)
 {¶ 15} On appeal, Appellees again take issue with Appellants' failure to produce the complete and original signed agreement. They argue that since this second version was unsigned, there is no way to determine if this is, in fact, the agreement ultimately signed by Appellees. Because of this question, they argue that the court should have permitted discovery on this issue.
 {¶ 16} Contrary to Appellees' arguments, it seems apparent that the second, unsigned agreement Appellants presented to the trial court was the version governing the instant matter. The fact that Appellants erred and originally produced one wrong page of the agreement does not mean that the second document was somehow false. Instead, it appears as though the record custodian simply made a mistake in his initial identification of the document. In fact, Appellants' counsel explained the company keeps only the signature page of the document. They then had to search their archives to produce the body of the agreement in effect at the time Appellees signed the document. Clearly, the language contained in the signed version of that page is identical to the language contained in the second document produced by Appellants.
 {¶ 17} Furthermore, Appellees do not allege by affidavit or other means that this second document was not the version of the agreement that they signed or that these were not the governing terms and conditions. They supplied no evidence challenging the veracity of the second version of the client agreement submitted by *Page 5 
Appellants. Without more, the trial court did not abuse its discretion in disallowing discovery on this limited issue. Accordingly, we will turn to the allegations of unconscionability of the parties' arbitration agreement.
 {¶ 18} Both Ohio and federal courts favor arbitration to settle disputes. Kelm v. Kelm (1993), 68 Ohio St.3d 26, 27, 623 N.E.2d 39. Arbitration is encouraged, and when a claim arises subject to an arbitration clause, a presumption in favor of arbitration exists.Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 700 N.E.2d 859.
 {¶ 19} R.C. 2711.02 directs that a trial court must stay any court proceedings of a case if the issues in controversy are subject to an arbitration agreement. An appellate court reviews a trial court's decision to stay a matter pending arbitration for an abuse of discretion. Carter Steel Fabricating Co. v. Danis Bldg. Constr.Co. (1998), 126 Ohio App.3d 251, 254-255, 710 N.E.2d 299.
 {¶ 20} However, when a party alleges that the arbitration agreement is unconscionable or that the contract is adhesive, the enforceability of the arbitration provision is an issue of law for the trial court to decide. Porpora v. Gatliff Bldg. Co., 160 Ohio App.3d 843,2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 5; English v. Comwell QualityTools Co., 9th Dist. No. 22578, 2005-Ohio-6983, at ¶ 6. On appeal, we review the trial court's partial enforcement of the arbitration clause and finding as to unconscionability of the fees de novo. Id.
 {¶ 21} Appellees filed their complaint against Appellants on June 14, 2004, in the Belmont County Court of Common Pleas. Their multiple claims arose out of *Page 6 
investments they made with Appellants. As earlier stated, Appellants filed a motion to dismiss or, in the alternative, a request to stay the proceedings pending arbitration since Appellees signed a Merrill Lynch Client Relationship Agreement containing an arbitration clause.
 {¶ 22} Appellees filed a motion alleging that the clause was substantively and procedurally unenforceable. They claimed that the arbitration clause was buried in fine print, that it referred to documents that were not part of the agreement, and that the agreement failed to disclose that they would be responsible for the significant arbitration costs.
 {¶ 23} Both Appellees submitted affidavits with their motion. They stated that they did not recall signing or receiving the agreement. Both indicated, however, that the agreement could have been one of the many documents they signed because Moyer told them they must sign all the documents he gave them and they trusted him. They did not dispute that their signatures were on the agreement. (Affidavits of Jeffrey and Antoinette Peltz.)
 {¶ 24} The trial court ordered the parties to determine a reasonable range for arbitration costs because the court determined that, "substantial undisclosed costs will be incurred by plaintiffs which were not disclosed in the arbitration agreement." (Feb. 18, 2005, Docket Entry.) According to the NASD online fee calculator, Appellees believed their initial arbitration costs were $1,700; a $500 filing fee plus a $1,200 hearing session deposit. (Plaintiffs Statement of Reasonably Anticipated Arbitration Costs, Exh. D.) *Page 7 
 {¶ 25} Thereafter, the trial court held that the arbitration clause was not unconscionable provided Appellants, as the drafting party, pay the costs associated with arbitration. (April 12, 2005, Docket Entry.)
 {¶ 26} Appellants sought clarification of the trial court's entry, indicating that it did not state whether the trial court was granting the stay. In response, the trial issued yet another entry, which stated in full,
 {¶ 27} "Case stayed pending arbitration.
 {¶ 28} "Defendants to advance NASD fees for filing and arbitration fees.
 {¶ 29} "Parties to report the date of the NASD arbitration to the Court upon the setting of the same." (Feb. 15, 2006, Docket Entry.)
 {¶ 30} Based on these entries, it is apparent the trial court impliedly held that Appellees' allegedly undisclosed responsibility for the initial arbitration fees was unconscionable. Appellants timely appealed.
 {¶ 31} The record reflects that Appellees signed a document entitled "Merrill Lynch Client Relationship Agreement" under the heading Tax Certification and Acknowledgements. Under this heading, the document stated in rather small print:
 {¶ 32} "BY SIGNING BELOW, I AGREE TO THE TERMS OF THE MERRILL LYNCHCLIENT RELATIONSHIP AGREEMENT ON THE REVERSE SIDE AND: * * * 2. THAT IN ACCORDANCE WITH PARAGRAPH 11 OF THE CLIENT RELATIONSHIP AGREEMENT I AM AGREEING IN ADVANCE TO ARBITRATE ANY CONTROVERSIES THAT MAY ARISE WITH YOU; "(Defendants' Motion to Dismiss or, in the Alternative, to Stay Proceedings Pending Arbitration, Exh. 1.) *Page 8 
 {¶ 33} Paragraph 11 to the Agreement was in the same print, stating in part,
 {¶ 34} "11. AGREEMENT TO ARBITRATE CONTROVERSIES WITH YOU
 {¶ 35} I agree that all controversies that may arise between us shall bedetermined by arbitration. Such controversies include, but are notlimited to, those involving any transaction in any of my accounts withyou, or the construction, performance or breach of any agreement betweenus, whether entered into or occurring prior, on or subsequent to thedate hereof.
 {¶ 36} "* * *
 {¶ 37} "Arbitration is final and binding on the parties.
 {¶ 38} "The parties are waiving their right to seekremedies in court, including the right to jury trial.
 {¶ 39} "Pre-arbitration discovery is generally more limited than anddifferent from court proceedings.
 {¶ 40} "The arbitrators' award is not required to include factualfindings or legal reasoning, and any party's right to appeal or seekmodification of rulings by the arbitrators is strictly limited.
 {¶ 41} "The panel of arbitrators will typically include a minority ofarbitrators who were or are affiliated with the securitiesindustry.
 {¶ 42} "Any arbitration pursuant to this provision shall be conductedonly before the New York Stock Exchange, Inc., an arbitration facilityprovided by any other exchange of which you are a member, or theNational Association of Securities Dealers, Inc., and in accordance withits arbitration rules then in *Page 9 effect. I may elect in the first instance whether arbitration shall beconducted before the New York Stock Exchange, Inc., other exchanges ofwhich you are a member, or the National Association of SecuritiesDealers, Inc., but if I fail to make such election * * *, then you maymake such election. Judgment upon the award of arbitrators may beentered in any court, state or federal, having jurisdiction." (Sept. 20, 2004, Brief in Opposition Plaintiff's Motion for Reconsideration, Exh. 1.)
 {¶ 43} R.C. 2711.01(A) allows a court to invalidate an arbitration agreement if the agreement is found to be unconscionable. In order to determine whether a contract provision is unconscionable, courts must examine the facts and circumstances surrounding the agreement.Lightning Rod Mut. Ins. Co. v. Saffle (Nov. 6, 1991), 9th Dist. No. 15134. A court must read an agreement in its entirety and construe it against the drafting party. Eagle v. Fred Martin Motor Co.,157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, at ¶ 35. "If a contract or a term in a contract is found to be unconscionable at the time that the contract was made, a court may choose either to enforce the contract, enforce the contract without the unconscionable portion, or limit the application of the unconscionable portion to avoid an unconscionable result." (Citations omitted.) Id. at ¶ 36.
 {¶ 44} It has been held that an arbitration clause is unconscionable where the, "clauses involved are so one-sided as to oppress or unfairly surprise [a] party." Neubrander v. Dean Witter Reynolds, Inc. (1992),81 Ohio App.3d 308, 312, 610 N.E.2d 1089, quoting Black's Law Dictionary (5th Ed. Rev. 1979) 1367. *Page 10 
Unconscionability has been further defined as the absence of a meaningful choice (procedural unconscionability) in addition to presentation of contract terms that are unreasonably favorable to one side (substantive unconscionability). Collins v. Click Camera Video,Inc. (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294. A court must find both procedural and substantive unconscionability in order to invalidate an arbitration clause.
 {¶ 45} Collins, supra, explained substantive unconscionability in the following manner:
 {¶ 46} "Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." (Citations omitted.)
 {¶ 47} Appellees alleged the arbitration clause in their agreement was substantively unconscionable based on references to arbitration rules not specifically made a part of the agreement, especially the fact that they were responsible for significant arbitration fees. *Page 11 
 {¶ 48} A review of the NASD arbitration case flow fee description reveals that Appellees would incur a nonrefundable filing fee and a hearing session deposit totaling about $1,700, plus other potential fees, which may include a nonrefundable $750 prehearing process fee, a hearing process fee, and an adjournment fee. (Plaintiffs Statement of Reasonably Anticipated Arbitration Costs, Exhs. E and D.) In response, Appellants pointed out that the arbitration fees may eventually be assessed against them in the arbitrators' decision. Further, although the costs were not specifically disclosed in the body of the agreement itself, the agreement clearly referred Appellees to the governing arbitration rules.
 {¶ 49} Collins also outlined the standard for reviewing a question of procedural unconscionability:
 {¶ 50} "Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties,e.g., `age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.'" (Citations omitted.) Id. at 834.
 {¶ 51} A court should also consider whether the party claiming unconscionability was represented by counsel at the time the contract was formed. Bushman v. MFC Drilling, Inc. (July 19, 1995), 9th Dist. No. 2403-M, 3. Appellees were not represented by counsel at the time of their agreement with Appellants. (Affidavits of Jeffrey and Antoinette Peltz.) *Page 12 
 {¶ 52} In support of their procedural unconscionability argument, Appellees state their affidavits that the arbitration agreement was never directly brought to their attention or explained to them. They also assert that Jeffrey Peltz is a simple coal miner, whereas Merrill Lynch is one of the most successful and business savvy securities dealers in America. However, there is no actual evidence before us as to the experience, education, or business skills of either party. We must note that this argument sprang from an investment decision, voluntarily undertaken by Appellees, and this implies a certain amount of complexity will be involved and that a certain level of sophistication is to be expected. Accordingly, we cannot consider Appellees' arguments in this regard.
 {¶ 53} Further, based on their affidavits, it is apparent that Appellees had the opportunity to review the documents that they signed, and upon reading the arbitration clause, they could have asked questions. Certainly, Appellees could have gone elsewhere for investment advice. Instead, it appears that they blindly signed the myriad of documents presented to them.
 {¶ 54} Appellees direct our attention to Williams v. Aetna FinanceCompany (1998), 83 Ohio St.3d 464, 700 N.E.2d 859, in which the Ohio Supreme Court upheld the trial court's refusal to enforce an arbitration clause. The plaintiff in Williams was an elderly widow living in a poor neighborhood who was targeted by a "pitchman" named Blair. Blair solicited Williams at her home and had its representative drive Williams to Aetna's finance company several times to sign loan documents secured by her personal property and home equity. She then signed most of the loan checks *Page 13 
over to Blair to pay for home improvements. Blair's workers failed to complete the improvements, and Williams was left with two separate loans. Id. at 466.
 {¶ 55} Williams filed suit and Aetna sought to enforce an arbitration clause set forth in the loan agreements. Id. at 467. The trial court overruled the request without giving a reason. Aetna appealed the decision, but the appellate court upheld the trial court's decision, and the Supreme Court dismissed the matter. Id.
 {¶ 56} At trial, Williams argued that Blair and Aetna's finance company schemed to defraud her as an elderly and unsuspecting homeowner in a low-income area. Following the jury's verdict, Aetna appealed claiming, in part, that the trial court erred in failing to enforce the arbitration clause. Id. at 468.
 {¶ 57} In discussing the broad arbitration clause contained in the home equity loan, the Supreme Court noted that although a presumption in favor of arbitration exists, there are limited exceptions when these clauses will be held unenforceable. It concluded that, "[t]he record in this case clearly would support a finding that the arbitration clause violated principles of equity, given all of the attendant facts and circumstances." Id. at 472. Williams also noted:
 {¶ 58} "The trial court was entitled initially to view the arbitration clause at issue with some skepticism. * * * [T]he arbitration clause, contained in a consumer credit agreement with some aspects of an adhesion contract, necessarily engenders more reservations than an arbitration clause in a different setting, such as in a collective bargaining agreement, a commercial contract between two businesses, or a brokerage agreement." Id. *Page 14 
 {¶ 59} The Williams Court indicated that the facts in that case also seemed to support that the contract itself was an adhesion contract and that, "the presumption in favor of arbitration should be substantially weaker in a case such as this, when there are strong indications that the contract at issue is an adhesion contract, and the arbitration clause itself appears to be adhesive in nature. [Thus there was] considerable doubt that any true agreement ever existed to submit disputes to arbitration." Id. at 473.
 {¶ 60} Appellants argue that Williams actually supports their case, since it held that the use of arbitration clauses in brokerage agreements is appropriate. However, this is a misreading ofWilliams. In Williams, the Supreme Court merely cited examples of arbitration clauses in form contracts which may not be viewed with "skepticism," and it cited brokerage agreements as one example.
 {¶ 61} Further, whether an arbitration clause is contained in an adhesion contract is a fact to consider in addressing whether it is procedurally unconscionable. An adhesion contract has been defined as a, "`standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who has little choice about the terms.'" Porpora v. Gatliff Building Company,160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, at ¶ 12 quoting Black's Law Dictionary (7th Ed. 1999) 318-319.
 {¶ 62} The arbitration agreement in the home construction contract at issue in Porpora was found to be procedurally unconscionable, since the owner of the company testified that he would not have entered into an agreement with a consumer *Page 15 
who refused to sign his company's standard contract. Id.Porpora also held that the agreement was substantively unconscionable since the home buyer was unable to even initiate arbitration until the contractor deemed that substantial completion of the construction had occurred; arbitration was the only method available to the buyer to enforce the contract provisions; and the clause did not disclose the substantial costs associated with arbitration. Initial fees under the American Arbitration Association would have cost about $2,750. Id. at ¶ 15-17.
 {¶ 63} In support of their argument that the contract at issue here was one of adhesion, Appellees state in their affidavits that they were instructed that they had to sign all of the documents presented by Moyer in order to obtain the many promises he made. Moyer stated in his affidavit that a new customer must sign the Merrill Lynch Client Agreement before Merrill Lynch will open accounts on their behalf. (Sept. 17, 2004, Affidavit of Mark Moyer.) Thus, Appellees had to sign the agreement to invest with Merrill Lynch. However, it is undisputed that Appellees could have simply refused to sign the agreement and gone elsewhere for investment services.
 {¶ 64} Appellees also cite to Eagle v. Fred Martin Motor Co.,157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, in support of their claims on appeal. Eagle involved the sale of a motor vehicle and the Consumer Sales Practices Act. The plaintiff in Eagle alleged that the arbitration clause in her purchase agreement was substantively unconscionable because it, "imposes excessive costs, mandates secrecy, contains a loser pays provision, and eliminates important consumer rights[.]" *Page 16 
Id. at ¶ 34. In support of her procedural unconscionability claims, the plaintiff pointed to the manner in which the dealership proceeded with the paper work in addition to the fact that she was not given a copy of the contract containing the clause.
 {¶ 65} The Eagle court analyzed several cases includingWilliams, supra, in which arbitration clauses in the consumer context were held unconscionable based on the fact that the agreement did not disclose the requisite payment of substantial fees in advance of arbitration. Id. at ¶ 39-44. The arbitration of Eagle's claim would have cost an initial $750 filing fee in addition to one percent of the amount of any claim in excess of $75,000. These costs did not include any hearing fees, discovery fees, and continuance fees. Eagle held that the arbitration agreement was substantively unconscionable in that case since the undisclosed arbitration fees were, "prohibitive, unreasonable, and unfair as applied to Ms. Eagle." Id. at ¶ 51.
 {¶ 66} In Eagle the court concluded that the arbitration clause was procedurally unconscionable as well, indicating that the preprinted purchase contract resembled an adhesion contract since a consumer doing business with the dealership had no choice but to sign their contract. It also noted the huge disparity in bargaining power in this "take it or leave it" contract and the fact that the undisclosed costs were an unfair surprise. Id. at ¶ 57, 59, 60. Ms. Eagle was not represented by counsel in the transaction.
 {¶ 67} Appellants argue that both Williams and Eagle are distinguishable, since both cases involved arbitration agreements in consumer sales or credit agreements. Unlike a form contract between a purchaser of a car or a home repair *Page 17 
solicitation, the contract in the instant case involved Appellees' investment of certain savings. Appellees, as investors of money, are in a much different position than a consumer purchasing a vehicle or one who is solicited in her home. They do not seek to purchase a necessary good and have not been approached by a slick pitchman. Appellees are actively seeking to engage in a fairly complicated investment transaction. Presumably, one seeking to invest what has been described as a "life savings" does not do so without a certain level of knowledge and understanding.
 {¶ 68} Appellants draw our attention to cases specifically dealing with investments. Appellants cite Featherstone v. Merrill Lynch, Pierce,Fenner Smith, Inc., 159 Ohio App.3d 27, 2004-Ohio-5953,822 N.E.2d 841. Featherstone involved claims by an investor that the arbitration clause in the investment agreement was unconscionable and thus unenforceable. The trial court agreed.
 {¶ 69} On appeal, Featherstone asserted several factors in support of his argument, including that he was unable to negotiate the terms of the contract; that Merrill Lynch would not provide services to him in the absence of his signing its form contract; that the arbitration agreement was on the 25th page of the agreement; and finally, that the agreement indicated that one of the arbitrators may include a, "minority of arbitrators who are affiliated with the securities industry." Id. at ¶ 11.
 {¶ 70} However, the court of appeals concluded that Featherstone failed to offer evidence that the agreement was substantively unconscionable. The only part of the agreement that Featherstone attacked on substantive grounds was that the *Page 18 
agreement indicated that a minority of the arbitrators may be affiliated with the industry. This allegation alone was insufficient to establish any bias in the appellees' favor. Thus, the court of appeals was unable to find that the arbitration clause was substantively unconscionable. Id. at ¶ 14.
 {¶ 71} In Baker v. Schuler, 2nd Dist. No. 02CA0020, 2002-Ohio-5386, the plaintiffs sought to recover money lost allegedly as a result of poor investment advice. The defendants sought to enforce an arbitration agreement, and the plaintiffs claimed that the clause was unconscionable and unenforceable. The trial court upheld the clause and stayed the case pending arbitration.
 {¶ 72} The court of appeals reviewed the matter and upheld the trial court's decision, stating, "[w]hen applying R.C. 2711.02(B), it has been held that, `any dispute concerning whether a particular issue is covered under an arbitration provision should be resolved in favor of coverage, i.e., arbitration provisions should be interpreted in a broad manner.'" Id. at ¶ 30, quoting Painesville Twp. Local School Dist. v. Natl. EnergyMgt. Inst. (1996), 113 Ohio App.3d 687, 681 N.E.2d 1369.
 {¶ 73} In analyzing the unconscionability argument, the Baker court distinguished its facts from those in the Ohio Supreme Court's decision in Williams v. Aetna, supra. In Baker the court concluded that unlikeWilliams, there were no "strong indicators" that the contract or the arbitration clause was adhesive in nature; there was no indication as to a great disparity in bargaining power; and the contract sufficiently drew attention to the arbitration clause. Finally, the Bakers and their daughter had sufficient time to review the financial plan and nonetheless chose to do *Page 19 
business with the defendants as opposed to another financial planner. In fact, the Bakers approached the defendants about setting up a new financial plan. Id. at ¶ 48. Thus, the arbitration clause was upheld.
 {¶ 74} In Lindsey v. Sinclair Broadcast Group, Inc., 2d Dist. No. 19903, 2003-Ohio-6898, the plaintiff challenged an arbitration agreement contained in her employer's stock share agreement. She alleged that the agreement was unconscionable since it contained a forum selection clause and provided that the costs and fees were to be paid by the losing party.
 {¶ 75} In upholding the arbitration provision in full,Lindsey stressed that there was no evidence the contract was adhesive. The plaintiff executed the agreement in order to receive company stock options; not to secure her employment. She also failed to set forth any evidence to establish that the costs of arbitration prohibited her from pursuing her claim. There was also no evidence as to the plaintiffs financial inability to travel to Maryland to arbitrate her claim. Id. at ¶ 23.
 {¶ 76} Based on the foregoing and in reviewing both the record and the relevant caselaw, we cannot hold that the arbitration agreement in this case was procedurally unconscionable. Although Merrill Lynch would not do business with customers who would not sign their agreement, Appellees did not seek investment services elsewhere. Appellees were not represented by counsel at the time they entered this agreement, but no evidence reflects that they were denied the opportunity to seek counsel. While the terms were not explained to Appellees, they could have asked questions and sought further explanation upon reviewing the *Page 20 
documents. There was no evidence as to the business savvy or education of either party, but again, investment matters are by their nature relatively complex and the Appellees sought these services voluntarily.
 {¶ 77} The clause in this case was not substantively unconscionable, either. The agreement imposes costs on the party initiating arbitration. Arbitration in the instant matter would initially cost about $1,700, which is certainly more than the $150 fee associated with filing a lawsuit in the Belmont County Court of Common Pleas. These costs were never specifically set forth in the actual arbitration agreement. However, the agreement clearly stated that any dispute between the parties was governed by an arbitration agreement, and it referred the parties to the governing rules. In addition, Appellees have not set forth any evidence of their inability to pay these arbitration costs, and $1,700 in initial costs does not appear to be significant in light of the fact that this agreement concerned a fairly large investment. Finally, the agreement allows that the arbitration costs may ultimately be assessed against Appellants in the event that Appellees' claims are meritorious.
 {¶ 78} In conclusion, based on the record and applicable caselaw, this arbitration agreement is fully enforceable as a matter of law. The arbitration clause clearly provided that it would govern "all controversies" between the parties; that it would be "final and binding"; and that Appellees were waiving their right to a jury trial. It also clearly stated that any arbitration would be governed by the rules of the New York Stock Exchange or the NASD. The contract sufficiently highlighted the arbitration clause and placed Appellees on notice of the governing rules. Thus, we *Page 21 
uphold the decision of the trial court to enforce the agreement and order this matter to arbitration per the parties' agreement, however, we must reverse the trial court's determination implicit in the decision that the fee provision in the agreement was unconscionable. As the agreement is enforceable in full, Appellees must pay the initial arbitration costs pursuant to the rules of arbitration identified in the contract.
 Vukovich, J., DeGenaro, P.J., concurs. *Page 1