EAST OHIO GAS COMPANY, APPELLANT, *v.* DUNCAN
ET AL., APPELLEES.*

[Cite as East Ohio Gas v. Duncan (1978),
63 Ohio App. 2d 163.]

(No. 1566—Decided October 25, 1978.)

*Buckingham, Doolittle & Burroughs Co., L.P.A., Mr.
John M. Glenn* and *Mr. Robert M. Gippin,* for appellant.
*Mr. John N. Teeple,* for appellees.

HUNSICKER, J.   This appeal is brought by The East Ohio
Gas Company, which was unsuccessful in securing a perma-
nent injunction in the Court of Common Pleas of Wayne
County. In that action, plaintiff-appellant, East Ohio Gas,
sought to permanently enjoin defendant-appellee James
Duncan from interfering with its operation of a natural gas
well located on the Duncan property.

The plaintiff claims it has a right to use this well to
monitor gas migration in the Clinton Sands storage area, bas-
ed on a 1938 lease, a 1956 modification of that lease, and a
1957 supplemental storage agreement, all entered into with
defendants' predecessors in title. The defendants claim these
agreements have expired and are, therefore, null and void.

On one occasion, the plaintiff's employee was evicted
from the defendants' property while attempting to check the
well in question. Mr. Duncan did not permit the employee to
leave with the gas company's truck, which remained on the

---

* Reporter's Note: A motion to certify the record was overruled by the Supreme
Court of Ohio, April 20, 1979.

defendants' property for two days. The plaintiff claims damages, both compensatory and punitive, for the alleged conversion of this truck.

The defendants filed a counterclaim alleging that the plaintiff neglected to develop the well on the property into a producing well, depriving the defendants of substantial gas royalties.

The plaintiff assigns the following errors:

"1. The court of common pleas erred in dismissing the plaintiff's complaint.

"2. The court of common pleas erred in finding that the oil and gas lease recorded in Volume 56, Page 583, and modification of leases recorded in Volume 81, Pages 260-263 and the Supplemental Storage Agreement recorded in Volume 84, Page 221 of the Wayne County Records are null and void.

"3. The court of common pleas erred in finding that the plaintiff has no right, title or interest in the well described in this case as East Ohio Well #2033 and no right upon the defendants' property except to go upon it to remove the said well.

"4. The court of common pleas erred in finding that the validity of the Supplemental Storage Agreement depended on the plaintiff's use of a well on defendants' property for introducing, injecting, storing, or removing natural gas.

"5. The court of common pleas erred in finding that the Supplemental Storage Agreement was null and void because of the absence of evidence that payments were made to defendants' predecessors in title.

"6. The court of common pleas erred in finding that the Supplemental Storage Agreement was null and void because of the absence of evidence that defendants' property was in the Clinton Sands Storage Area prior to March 29, 1974.

"7. The court of common pleas erred in finding that the defendants did not accept plaintiff's tender of payments.

"8. The court of common pleas erred in failing to assess damages against the defendants for detaining the plaintiff's truck."

The second, third and fourth assignments of error concern the terms and validity of the 1938 lease and the two subsequent modifications. The original 1938 document leased the property now owned by defendants to the gas company

for the "***purpose of drilling and operating for oil and gas, and all the constituents thereof, and of laying pipe lines, and of building tanks, stations, structures therein and thereon, to procure, take care of and transport***" oil and gas. The duration of the lease is specified as twenty years, or so much longer as oil and gas are present in paying quantities in the gas company's judgment, or as long as there is drilling activity. Unless drilling commences within three months of execution, or a delay rental is paid quarterly, the lease becomes null and void. The gas company is only responsible for payments to new owners of the property if it has been notified in a writing signed by the parties to the instrument of conveyance or by the receipt of the instrument of assignment.

The May 1956 agreement is a modification of the lease consolidating several leases into a single tract of land for drilling purposes. It provides that if the gas company does not begin to drill within six months, this particular consolidation agreement is null and void, but the original lease is unaffected and continues in full force. A well was drilled in the fall of 1956, within the six month limitation period.

In September 1957, the 1938 lease was again modified by a Supplemental Gas Storage Agreement which gave the company the additional right of:

"[I]ntroducing, injecting, storing, and removing gas *of any kind, including gas now or at any time hereafter lying under said premises, either through wells now located or hereafter drilled upon said premises or through wells located upon any other premises within the so-called Clinton Sands Area*** or by any other method or means whatsoever, into, in and from any and all sub-surface sands, formations or reservoirs known as the so-called Clinton Sands underlying said premises, whether such gas is produced or secured on or off the premises,* and using for such purpose any well or wells now located hereon, to drill as it may elect, other wells thereon for such purpose, and to install and maintain on said premises such additional equipment and pipe lines on, over and across said premises to convey gas to and from said premises, and to use sufficient water from the premises to drill and operate wells and other equipment as may be necessary for such purpose." (Emphasis added.)

The duration of the original lease, which would have ex-

pired in 1958 absent drilling activities or the presence of paying quantities of gas, was extended for ten years and "so much longer either (1) as gas is being produced, stored, withdrawn, *or held in storage by the Lessee, in the sub-surface sands, formations or reservoirs known as the so-called Clinton Sands Storage Area within which these premises are comprehended,* or taken or marketed from a well or wells on the said premises; or (2) as oil is found on said premises, or gas is found in sub-surface formations underlying said premises other than the so-called Clinton Sands in paying quantities in the judgment of Lessee* * *." (Emphasis added.)

This agreement is also automatically terminated unless rent is paid quarterly for the use of the land authorized in the original lease and in the supplemental agreement. A handwritten addition to the form cancels the May 1956 consolidation agreement insofar as it affects the premises now owned by the defendants. The right of forfeiture or recision is conditioned on the lessor's giving of 30 days written notice, stating the reason for the forfeiture. Should the lessee remove the reason for default within 30 days, there is no recision or forfeiture. The unmodified terms and conditions of the 1938 lease are reaffirmed as continuing in full force.

As to the validity of the original lease, it appears to this court that the lease was never terminated. The record shows that there was no drilling until the fall of 1956, 18 years after the execution of the lease. However, as long as the delay rentals were paid quarterly to the owners of the property, there was no termination. We agree that the function of the "unless clause," cited by the defendants, is a limitation on the period of the leasehold grant. *Ellison* v. *Skelly Oil Co.* (1951), 206 Okla. 496, 244 P. 2d 832; 3 Summers, The Law of Oil and Gas, Section 452 (2d ed. 1958). In other words, the "unless clause" merely gave the gas company the option to prevent the lease from becoming null and void by paying the delay rentals. There is no evidence of either payment or nonpayment of these delay rentals in the record.

The supplemental storage agreement of 1957 supersedes the consolidation modification agreement of 1956. The main significance of that agreement is that it contains a recital of the location of the property as being above the Clinton Sands Area. By the terms of its habendum clause, the supplemental

storage agreement expires if the gas company fails to exercise any of the rights granted to it by the original lease and the supplemental agreement, or if the gas company fails to pay rent. There is no dispute between the parties that the gas company has been using this well to monitor migrating gases. No gas has ever been injected or withdrawn, and no pipelines run from this well. The defendants admit in their answer that the well is a storage well, and a witness for the plaintiff said the well was a storage well because it is one of the wells located in a storage field, as opposed to a production well. It must be decided whether the monitoring of a well to detect gas migration in a storage field is encompassed within the right to store gas "of any kind, including gas now or hereafter lying under said premises***through wells located upon any other premises within the so-called Clinton Sands Area." We must attempt to carry out the intent of the parties to the lease, and to the extent that such intent is expressed that expression must control. 33A Ohio Jurisprudence 2d 32, Landlord and Tenant, Section 106. The right to store gas must be different from the rights of merely injecting and removing gas, or there would be no purpose in listing it as a separate right. Therefore, from the trial court's finding that gas had never been injected or withdrawn from this well, it does not necessarily follow that gas was not stored in this well. On the contrary, as we read the broad language of the lease, East Ohio Gas was "storing" whatever remained of the gas lying under the Duncan premises when the well was drilled, plus any gas that may have migrated from wells on other premises above the Clinton Sands Area. It is our view that the gas company intended to create and protect a large scale, long term storage scheme when it executed this lease and undoubtedly hundreds exactly like it with other owners of property in the Clinton Sands Area.

As the Supreme Court of Ohio noted in *Myers v. East Ohio Gas* (1977), 51 Ohio St. 2d 121, which considered the validity of a supplement storage agreement containing the same terms as the one at issue, the habendum clause grants the gas company the use of the storage area "'for a term of ten years, and so much longer as gas is***stored***in the***Clinton Sands Storage Area.'" *Id.,* at 128 (concurring opinion of Judge Paul W. Brown). We read this language, together with the other broad terms of the agreement, as an

expression of an intention to secure the right to keep any gas from any source in that well for as long as The East Ohio Gas Company is storing gas in the Clinton Sands Storage area. The right to store gas in a well necessarily implies a right to inspect that gas, and because the company, under our broad interpretation of "storing," was exercising its right to store, it also had the right to monitor that which it stored. Assignments of error two, three and four are sustained.

As we do not find that the agreement expired because of a failure of the company to exercise the rights thereunder, we must determine whether the agreement was automatically terminated by a failure on the gas company's part to make quarterly rental payments. The trial court found that there was no evidence that payments were made to the defendants' predecessors in title, although this was not stated to be the basis of the ultimate conclusion that the agreements were null and void, as plaintiff claims in its fifth assignment of error. We are not persuaded that a lack of evidence is proof of either payment or nonpayment. Records of payment tendered to Mr. Duncan were produced from the years 1973 through 1977.

There appears to be an irregularity in the administration of the estate of the defendants' immediate predecessor in title in that the heirs would have been the proper party to be paid. However, we do not find the necessary evidence to support a conclusion that the gas company failed to pay rent, causing the forfeiture.

There was sufficient evidence that East Ohio tendered the rental payments to Duncan by check. Duncan held these checks for over three years, then concluded that the gas lease was invalid and filed the certificate of forfeiture which was countered by the certificate filed by East Ohio.

While a tender is usually required to be in cash, the custom was to make the rental payments by check. Duncan did not return the checks because of the medium of payment, but on the ground that the supplemental agreement was invalid. The length of retention of the checks is evidence of a valid tender and acceptance of payment. We sustain assignments of error five and seven.

The Supplemental Gas Storage Agreement recites that

the lands now occupied by the Duncans are in the "Clinton Sands Storage Area." With regard to the storage of gas on the Duncan lands, the supplemental agreement states that gas so stored may be gas from "wells located upon any premises within the so-called Clinton Sands Area." Thus, gas migrating from other areas into the Duncan well and kept there is stored gas within the terms of the agreement. The word "store" means to keep for future use. Websters Third New International Dictionary (1971). Thus, any gas coming from the previously defined Clinton Sands Area into the Duncan well and retained there complies with the supplemental agreement.

As was said in *Myers* v. *East Ohio Gas, supra,* at 125:

"It is a legal commonplace that courts, in deciding the rights of parties under a written agreement, including a lease, should give effect to the unambiguously expressed intent of the parties."

No one is able to say that the migrating gas comes from the pre-1957, the pre-1974 or the later 1974 gas area. The migrating gas is there, and East Ohio has a right under the agreement to keep it there for future use. That right would also include the right to monitor the stored gas to determine its future use. We sustain assignment of error six.

The evidence reveals that East Ohio had knowledge of the Duncans' position on the validity of the gas lease. The executives of East Ohio sent a letter to the foreman of the monitoring agent, Mitchell. This letter directed Mitchell, or any monitoring agent, not to go onto the Duncan land until the Duncans' claims were concluded. Lack of communication or obstinate disregard of the order caused the forcible ejection of Mitchell from the premises.

The lease is silent concerning the road to be travelled by East Ohio to get to the gas well or the time when the monitoring work is to be done. Certainly East Ohio cannot pick out its own path or its own time.

Under the circumstances in this very close case, we conclude that no error prejudicial to the rights of East Ohio occurred when the trial court refused to award compensatory and punitive damages for the conduct of Duncan toward Mitchell, the monitoring agent of the company, and for detention of the truck. We reject assignment of error eight.

The judgment of the trial court is reversed in part and affirmed in part as set out in this opinion.

*Judgment affirmed in part and reversed in part.*

MAHONEY, P.J., and VICTOR, J., concur.

HUNSICKER, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.