[Cite as *New Hope Community Church v. Patriot Energy Partners, L.L.C.*, 2013-Ohio-5882.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| NEW HOPE COMMUNITY CHURCH, et al. | ) ) ) | CASE NO. 12 CO 23 |
| PLAINTIFFS-APPELLEES, | ) ) | |
| - VS - | ) ) | OPINION |
| PATRIOT ENERGY PARTNERS, LLC, et al., | ) ) ) | |
| DEFENDANTS-APPELLANTS. | ) ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
                             Court, Case No. 11 CV 616.

JUDGMENT:                    Reversed.

JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: December 20, 2013

[Cite as *New Hope Community Church v. Patriot Energy Partners, L.L.C.*, 2013-Ohio-5882.]

APPEARANCES:

For Plaintiffs-Appellees:

Attorney Robert Guehl
Attorney Chad Burton
Attorney Brandon Cogswell
70 Birch Alley, Suite 240
Beaverscreek, OH  45440


For Defendants-Appellants:

Attorney William Dowling
Attorney Christopher S. Humphrey
Buckingham, Doolittle &
Burroughs, LLP
3800 Embassy Parkway, Suite 300
Akron, OH  44333
For Patriot Energy Partners and
Andrew Blocksom

Attorney Michael Matasich
Buckingham, Doolittle &
Burroughs, LLP
1375 East Ninth Street, Suite 1700
Cleveland, OH  44114-1700
For Patriot Energy Partners and
Andrew Blocksom

Attorney John Keller
Attorney Mitchell Tobias
Vorys, Sater, Seymour and
Pease, LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
For Chesapeake Exploration, L.L.C.

DeGenaro, P.J.

{¶1}   Defendants-Appellants, Patriot Energy Partners, LLC and Chesapeake Exploration, LLC, oil and gas lessees, appeal the May 15, 2012 judgment of the Columbiana County Court of Common Pleas denying their motion to stay the claims of Plaintiffs-Appellees, numerous property owners and lessors, pending arbitration, pursuant to an arbitration clause in the leases.  On appeal, Patriot and Chesapeake contend that the trial court erroneously concluded that the arbitration provisions were unconscionable and therefore unenforceable.

{¶2}   Upon review, Patriot and Chesapeake's arguments are meritorious. While the trial court correctly concluded that the arbitration provision is substantively unconscionable, the trial court erred by concluding that the arbitration clause is procedurally unconscionable.  Although none of the Property Owners had any past training in oil and gas leases, many had executed oil and gas leases in the past; were given time to review these leases and ask questions prior to signing, some proposing amendments to the leases.  Some simply did not read the leases including the arbitration provision or did not understand the arbitration clause, but conceded they could have sought outside counsel before signing and chose not to do so.  In order for an arbitration provision to be held unconscionable, both substantive and procedural unconscionability must be present.  Because the Property Owners only demonstrated that the arbitration clause was substantively unconscionable, the arbitration clause is valid.  Accordingly, the judgment of the trial court is reversed and the matter stayed pending arbitration.

## Facts and Procedural History

{¶3}   In 2008, several independent contractors, called landmen in the oil and gas industry, associated with Patriot, began securing oil and gas leases from landowners in Columbiana and Carroll Counties.  These landmen included Patriot president Andrew Blocksom, Thomas Blocksom, Benjamin Dickey and Robert Dickey. Bass Energy, a company headed by geologist Dr. William Hlavin, was the primary company behind Patriot.  Hlavin, via Bass Energy and Patriot, sought to secure as much leasehold acreage as possible within an area targeted due to its location along a specific geological fault-line.  The business of securing the leases generally began

with a telephone contact to prospective lessors by the landmen. Those who were interested were sent leases by mail to review. Sometimes the lessors would send the executed leases directly back to Patriot. In other cases, the landmen would personally visit the landowners to close the deals.

{¶4} All of the subject leases were granted in favor of Patriot in 2008, and were substantially the same, though some contained addenda negotiated by the Property Owners. The leases had primary terms of 5 years and specified a certain amount per acre, generally $10 in delay rentals; an annual amount the lessee is obligated to pay if no drilling is commenced on the property. The leases also provided for royalties on wells that were ultimately drilled and were productive.

{¶5} In 2010, Patriot assigned the deep rights under the subject leases to Chesapeake, for $1,100 per acre.

{¶6} On August 31, 2011, the Property Owners filed the present action against Patriot and Chesapeake, and pertinent to this appeal, sought rescission of the leases, a declaration that the leases were null and void, and the invalidation of the assignments to Chesapeake. During the course of the proceedings, the trial court granted Chesapeake's motion for equitable tolling of the primary terms of the leases. On October 7, 2011, Patriot and Chesapeake jointly moved to stay the proceedings pending arbitration. The Property Owners opposed the motion, arguing that the arbitration provision was unconscionable and therefore unenforceable.

{¶7} Each of the subject leases contains the following identical arbitration clause, which is set forth in the same size print and format as every other lease clause:

> **NOTICES AND ARBITRATION** * * * Any controversy arising out of or relating to this agreement shall be settled by arbitration. Either party may initiate any arbitration proceeding by notifying the other party in writing, but only after the aforementioned notice of breach has been served and the time period for cure provided for in this lease has

expired.  The procedure to be followed in the event of any arbitration shall be that prescribed in the Rules of the American Arbitration Association.  Judgment upon the award rendered by the arbitrators may be entered in any Court having jurisdiction thereof.

{¶8}  Three days of hearings were held on Patriot and Chesapeake's motion to stay pending arbitration in April 2012, prior to which the parties stipulated: (1) if paragraph 13 is enforceable the issues presented in the pleadings are arbitrable matters; (2) that all plaintiffs agreed to be bound by the trial court's decision and the decision would apply to each plaintiff individually, but that such agreement did not preclude appeal by either side.  Thus, the hearings focused on the issue of whether the arbitration clauses were unconscionable.

{¶9}  Twenty-three of the Property Owners testified about matters such as: the genesis of the leases, the contact they had with the landmen from Patriot, their prior business experience and their experience with oil and gas leases more generally.  Several landmen and Hlavin also testified.  The trial court took judicial notice of the American Arbitration Association (AAA) rules.  Since not all of the Property Owners testified at the hearings, the parties stipulated that the Property Owners' educational backgrounds ranged from a minimum of a GED to a maximum of a master's degree with some work towards a doctorate.  The parties also agreed that the remaining Property Owners who did not testify would have testified substantially the same as the others who had testified, with some minor personal variations.

{¶10} On May 15, 2012, the trial court issued a detailed decision denying Patriot and Chesapeake's  motion to stay pending arbitration.  The court concluded the "arbitration clause * * * [is] substantively and procedurally unconscionable and therefore not binding on the parties in this case."

## Enforceability of the Arbitration Clause

**{¶11}** In their sole assignment of error, Patriot and Chesapeake assert:

**{¶12}** "The trial court erred in denying the Motion to Stay Proceedings Pending Arbitration of Defendant-Appellants Chesapeake Exploration, L.L.C., Patriot Energy Partners LLC, and Andrew Blocksom because it incorrectly held that the arbitration provision was both substantively and procedurally unconscionable. (*See* Opinion and Order Denying Motion to Stay, attached as Appendix A.)"

## Arbitration and Standard of Review

**{¶13}** The Property Owners raise several issues that were not raised in the trial court, first that the arbitration clauses are against public policy in Ohio, and second that Patriot's alleged non-payment of delay rentals renders both the leases themselves, along with the arbitration clauses therein null and void. Generally, errors not raised in the trial court may not be raised for the first time on appeal. *See, e.g., In re Retaining Vorys, Sater, Seymour & Pease, L.L.P., as Special Counsel*, 192 Ohio App.3d 357, 2011-Ohio-640, 949 N.E.2d 84, ¶24. However, as this is an emerging area of Ohio law, we will exercise our discretion to address these issues. *See Kuhn v. 21st Century Ins. Co.*, 5th Dist. No. 2011 CA 00232, 2012-Ohio-2598, ¶19 ("Because waiver is a discretionary doctrine, an appellate court may decline to apply it in the interests of justice.")

**{¶14}** Turning to the public policy argument, Ohio's Arbitration Act has been codified in Revised Code Chapter 2711, and arbitration is encouraged as a method of settling disputes. See *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998). "Arbitration agreements are 'valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.' " *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶33 (quoting R.C. 2711.01(A)). "A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision. An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions,

an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Id.* at 471.

{¶15} The Ohio Supreme Court has noted there is a "strong public policy favoring arbitration" in Ohio as developed through case law over many years. *Schaefer v. Allstate Ins. Co.,* 63 Ohio St.3d 708, 711-712, 590 N.E.2d 1242 (1992), citing *e.g., Brennan v. Brennan*, 164 Ohio St. 29, 128 N.E.2d 89 (1955), paragraph one of the syllabus; *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 488 N.E.2d 872 (1986); and *Bd. of Edn. Of the Findlay City School Dist. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 551 N.E.2d 186 (1990).

{¶16} The Property Owners cite no direct, supporting authority that arbitration clauses, generally, or in oil and gas leases specifically, are against Ohio public policy; only citing to *Conny Farms Ltd. v. Ball Resources, Inc.*, 7th Dist. No. 09 CO 36, 2011-Ohio-5472, which is wholly inapplicable to their argument. In *Conny Farms*, this court held that judicial ascertainment clauses in oil and gas leases are unenforceable as against public policy in Ohio. *Id.* at ¶28.

{¶17} The Property Owners also argue that Patriot's alleged failure to pay delay rentals in a timely fashion renders the leases null and void, which, in their view, means that the arbitration clauses contained therein are also void and unenforceable. Patriot and Chesapeake counter that a motion for partial summary judgment on the delay rental nonpayment issue, filed by the Property Owners, remains pending in the trial court.

{¶18} " '[A]n arbitration clause is, in effect, a contract within a contract, subject to revocation on its own merits. * * * Because the arbitration clause is a separate entity, it only follows that an alleged failure of the contract in which it is contained does not affect the provision itself.' " *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 884 N.E.2d 12, ¶41, quoting *ABM Farms Inc. v. Woods*, 81 Ohio St.3d 498, 501-502, 692 N.E.2d 574.

{¶19} Thus, "an alleged failure of the overall contract does not necessarily

invalidate the arbitration clause," and a general challenge to the entire contract must be submitted to the arbitrator to determine the contract's validity. *Garber v. Buckeye Chrysler-Jeep-Dodge of Shelby*, 5th Dist. No. 2007-CA-0121, 2008-Ohio-3533, ¶16, citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-446, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (holding that regardless of whether the challenge is brought in federal or state court, a challenge to the validity to the contract as a whole, not specifically to the arbitration clause, must be submitted to the arbitrator in the first instance.) *See also Mingo Junction Safety Forces Assoc. Local 1 v. Chappano*, 7th Dist. No. 10 JE 20, 2011-Ohio-3401, ¶53-54 (holding that the trial court properly ordered the parties submit to the grievance and arbitration procedures in the collective bargaining agreement notwithstanding appellants' assertion that the contract had expired.)

**{¶20}** Accordingly, the Property Owners' argument concerning the overall validity of the leases due to the alleged non-payment of delay rentals is irrelevant to the issue of whether the arbitration clauses are enforceable.

**{¶21}** Where, as in this case, an action has been filed by one of the parties to an arbitration agreement raising issues which may be arbitrable pursuant to their written agreement, the other party may move the trial court for a stay of those proceedings "until the arbitration of the issue has been had in accordance with the agreement[.]" R.C. 2711.02(B). An order that grants or denies the stay of trial proceedings pending arbitration is a final appealable order. *Taylor Bldg. Corp. of Am.* at ¶31, citing R.C. 2711.02(C).

**{¶22}** Regarding the standard of review, a court of appeals generally applies an abuse of discretion standard to a trial court's decision regarding a stay pending arbitration. *Reynolds v. Crockett Homes, Inc.*, 7th Dist. No. 08 CO 8, 2009-Ohio-1020, ¶11. However, "the proper standard of review of a determination of whether an arbitration agreement is enforceable in light of a claim of unconscionability is de novo." *Taylor Bldg. Corp. of Am.* at ¶2. Any factual findings made by the trial court in support of its unconscionability determination, particularly those involving credibility

determinations, should be afforded appropriate deference. *Id.* at ¶38.

### Unconscionability

{¶23} Patriot and Chesapeake argue that the trial court erred in concluding that the arbitration provisions in the leases are unconscionable and therefore ordering the matter proceed to trial before the court rather than stayed pending arbitration.

{¶24} "Arbitration agreements are 'valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.' " *Taylor Bldg., Corp. of Am.* at ¶33 (quoting R.C. 2711.01(A)). Unconscionability is a valid basis for revoking a contract. *Id.*

{¶25} It is settled law in Ohio that generally: "In order to determine whether a contract provision is unconscionable, courts must examine the facts and circumstances surrounding the agreement." *Peltz v. Moyer*, 7th Dist. No. 06 BE 11, 2007-Ohio-4998, ¶43. There are two facets to unconscionability: procedural and substantive. Both prongs must be met for a contract provision to be found unenforceable due to unconscionability; with the focus on whether the arbitration provision itself is unconscionable, as opposed to the overall contract itself. *Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 352, at ¶42. However, there is a dearth of case law specifically addressing the enforceability of arbitration clauses in oil and gas leases.

### *Substantive Unconscionability*

{¶26} Whether a contract provision is substantively unconscionable requires an analysis of the terms of the provision itself and a determination of whether those terms are commercially reasonable. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶33. No bright-line set of factors for determining substantive unconscionability has been adopted by the Ohio Supreme Court. *Id.* "The factors to be considered vary with the content of the agreement or provision at issue." *Id.*

{¶27} When reviewing arbitration provisions for substantive unconscionability, courts have considered factors such as the cost of arbitration; the specificity of the

provision, e.g., whether the rules governing arbitration and any required fees are disclosed; the relative prominence of the provision, e.g., whether the arbitration clause is set forth in fine print buried within a larger contract or is contained in a separate document; and whether the obligation to arbitrate applies equally to all parties. *See, e.g., Taylor Bldg Corp. of Am.*, ¶54-60; *Peltz,* 7th Dist. No. 06 BE 11, ¶47-48. *Robbins v. Country Club Ret. Ctr. IV, Inc.*, 7th Dist. No. 04 BE 43, 2005-Ohio-1338, ¶37; *Wascovich v. Personacare of Ohio*, 190 Ohio App.3d 619, 2010-Ohio-4563, 943 N.E.2d 1030, ¶43-54 (11th Dist.); *Eagle v. Fred Martin Motor Co.*, 57 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161 (9th Dist.); *Vanyo v. Clear Channel Worldwide,* 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶20 (8th Dist.). The party challenging the enforceability of the arbitration agreement bears the burden of presenting evidence to support that challenge*. Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶27. The evidence regarding substantive unconscionability in this case is mixed.

**{¶28}** Turning first to factors weighing against substantive unconscionability, the leases are part of the record, and the obligation to arbitrate clearly applies to both parties, not just the lessors. *See, e.g., Vanyo v. Clear Channel Worldwide,* 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶20 (8th Dist.). The clause specifically informs the parties about the procedures under which the arbitration will proceed: "[t]he procedure to be followed in the event of any arbitration shall be that prescribed in the Rules of the American Arbitration Association." *See Peltz* at ¶48. Nor is an arbitration clause substantively unconsicionable because the word "binding" was not used, s*ee generally Schaefer v. Allstate Ins. Co.,* 63 Ohio St.3d 708, 711, 590 N.E.2d 1242 (1992), or requires the parties to waive their right to a jury trial, and does not warn them of this fact. *Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 352 at ¶55. Finally, the text of the arbitration clause was set forth in the same sized text as every other clause in the contract, not in "fine print," which would weigh somewhat against substantive unconscionability as well. *See, e.g., Moran v. Riverfront Diversified, Inc.*, 197 Ohio App.3d 471, 2011-Ohio-6328, 968 N.E.2d 1, ¶25.

**{¶29}** Moreover, both the trial court and the Property Owners incorrectly assert that the arbitration agreement precludes the Property Owners from the remedies of the Consumer Sales Practices Act. The agreement itself does not provide any limitation of remedies. "With respect to the arbitrability of CSPA claims, R.C. Chapter 1345 does not expressly preclude arbitration clauses in consumer sales contracts. * * * " 'The fact that R.C. 1345.04 confers jurisdiction upon common pleas and municipal courts in cases arising under the CSPA does not preclude arbitration of such claims.' " *Eagle*, 157 Ohio App.3d 150, ¶27.

**{¶30}** We turn next to the factors that weigh in favor of substantive unconscionability. The clause itself is very brief and does not provide much in the way of specific information about arbitration proceedings. Further, the Property Owners allege that the arbitration provision is misleading in that it sets forth an oversimplified explanation about how one initiates arbitration proceedings, one that is contrary to the procedure set out in the AAA handbook. Appellants counter that the fact that the provision may have been misleading has "no bearing on the determination of any potential unconscionability."

**{¶31}** The Eighth District held that the misleading nature of an arbitration clause rendered it substantively unconscionable in *Olah v. Ganley Chevrolet Inc.*, 8th Dist. No. 86132, 2006-Ohio-694, at ¶26. There the clause stated, *inter alia*, that "ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT." *Id*. at ¶20. The Eighth District concluded that this statement was misleading and ambiguous, which factored into its ultimate decision that the clause was substantively unconscionable. *Id*. at ¶20-21, ¶26.

**{¶32}** Here the arbitration clause states: "[e]ither party may initiate any arbitration proceeding by notifying the other party in writing * * *" This is an oversimplified explanation of the AAA rules which state:

R-4 Initiation under an Arbitration Provision in a Contract

(a) Arbitration under an arbitration provision in a contract shall be initiated

in the following manner:

> (i) The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.
>
> (ii) The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.
>
> (iii) The AAA shall confirm notice of such filing to the parties.

Thus, the clause is misleading in this respect.

{¶33} Further, the trial court found, and the Property Owners assert on appeal, that "arbitration would result in multiple arbitrations, potential inconsistent findings and enormous costs," and therefore the arbitration clause was commercially unreasonable. Only the concerns regarding costs are well-founded.

{¶34} The trial court took judicial notice of the AAA Rules during the hearing on the motion to stay, and AAA rules do provide for class arbitrations; specifically the Supplementary Rules for Class Arbitrations. And the arbitration clause here is distinguishable from the one in *Rude v. NUCO Edn. Corp.*, 9th Dist. No. 25549, 2011-Ohio-6789, cited by the Property Owners, which expressly prohibited class claims. *Id. at* ¶22. Thus, there does not appear to be a risk of multiple arbitrations or inconsistent findings.

{¶35} However, arbitration costs would be *substantially* higher than a court proceeding. The AAA filing fees are based upon the amount of the claim, and must be advanced by the filing party. Here the Property Owners prayed for over $20 million

in compensatory and punitive damages. The Initial Filing Fee under the AAA's Standard Fee Schedule for a $20 million claim is $13,800. Even under the Flexible Fee Schedule, which offers lower initial filing fees but potentially higher total administrative costs, the Initial Filing Fee for a $20 million claim would be $4,500. In addition, the parties would be responsible for other expenses, including half of the arbitrator's travel and expenses and half of the cost of renting a hearing room.

{¶36} In *Taylor Bldg. Corp of Am.*, 117 Ohio St.3d 352, the plaintiffs failed to put on evidence of the costs of arbitration and thus the Ohio Supreme Court did not conclude the clause was substantively unconscionable. But the court alluded to the fact that at some point an arbitration clause could become so cost-prohibitive as to render it substantively unconscionable as a matter of law. *Taylor Bldg. Corp.* at ¶60. *See also Rude*, 2011-Ohio-6789, ¶24, quoting *Felix v. Ganley Chevrolet Inc.*, 8th Dist. No. 86990, 86991, 2006-Ohio-4500, ¶21: ("Although silence of an arbitration clause with respect to costs does not, by itself, make the clause unconscionable, 'if the costs associated with the arbitration effectively deny a claimant the right to a hearing or an adequate remedy in an efficient and cost-effective manner,' then the clause is invalid.")

{¶37} Patriot and Chesapeake argue that the Property Owners failed to prove that the arbitration fees would be cost-prohibitive to them specifically. However, each Property Owner who testified offered information about his or her education and employment history, and as a group, the Property Owners appeared to be middle-class, not people of great wealth. In its Opinion, the trial court found the Property Owners to be "average to above average educationally and financially[.]"

{¶38} The administrative costs of arbitrating this matter would be many thousands of dollars, with the Property Owners having to shoulder the burden of advancing the filing fees. Although the AAA rules provide that "[u]nless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award," there is no guarantee that the Property Owners would be awarded those costs and thus they are taking a substantial financial

risk by filing.  Further although Patriot and Chesapeake are correct that AAA Rule R-49 does provide for deferred or reduced administrative fees in the event of "extreme hardship," the rules do not define this and it is unclear whether the Property Owners would qualify.

**{¶39}** In sum, the very high administrative costs, coupled with the lack of specificity in the arbitration clause, along with the misleading nature of the clause, render it substantively unconscionable; we agree with the trial court's determination in this regard and we reach this conclusion mindful of our standard of review.  Resolution of these particular issues depends upon the credibility of the witnesses; a central factor in the trial court's determination of whether or not the arbitration clause is unconscionable.  By design, this court's ability to make credibility determinations is significantly limited; thus our deference to the trial court particularly when issue resolution is fact-driven.  *Taylor Bldg. Corp. of Am.,* supra.  However, *both* substantive and procedural unconscionability must be present to for a court to deem an arbitration clause unenforceable due to unconscionability.

*Procedural Unconscionability*

**{¶40}** "Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible."  *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, ¶7, quoting *Porpora v. Gatliff Building Co.*, 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, ¶7.  Thus, courts must consider the circumstances surrounding the parties' bargaining.  *Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 352 at ¶44.  Such circumstances include the parties' respective ages, educational backgrounds, intelligence, business acumen and experiences, along with who drafted the contract, whether alterations in the printed terms were possible and whether there were alternative sources of supply for the subject goods or services.  *Id.*

**{¶41}** In addition, other factors that may contribute to a finding of procedural unconscionability include:

'[a] belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.'

*Id.* at ¶44, quoting Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

**{¶42}** First, with regard to financial and educational background, the parties stipulated that the Property Owners' educational backgrounds ranged from a minimum of a GED to a maximum of a master's degree with some work towards a doctorate. In its Opinion, the trial court found the Property Owners to be "average to above average educationally and financially[.]" Regarding business acumen, a number of Property Owners ran businesses. One managed the books for a spouse's business for over 24 years; one was the president of an industrial packaging distribution company with over $5 million in annual sales; one ran a storage unit rental business, and another managed 40 residential rental units; and others had experience working in banks and law offices. A number of Property Owners had prior oil and gas or coal leases on their property. All of these factors would appear to weigh against procedural unconscionability.

**{¶43}** There is some evidence of unequal bargaining power. Through their experience as landmen, Patriot's representatives certainly had more experience with oil and gas leases than the Property Owners. However, "[m]ere inequality of bargaining power is insufficient to invalidate an otherwise enforceable arbitration agreement." *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, ¶19, citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

{¶44} Importantly, there is no evidence of duress or coercion by the landmen. None of the Property Owners testified that they felt pressured into signing the leases. To the contrary, almost all of the Property Owners were sent copies of the leases by mail to review before signing. The Property Owners as a whole testified that they had time to review the leases before signing, sometimes months. This situation is readily distinguishable from *Rude, supra*, which involved an arbitration provision in a nursing school enrollment contract. A major factor in finding procedural unconscionability in *Rude* was that each student "testified, entirely consistently, that [the admissions representative] urged her to sign the enrollment agreement during the meeting or risk losing [her] spot in the program. This representation acted as an impetus for each [student] to sign the enrollment form." *Id.* at ¶14.

{¶45} And despite having ample time to review the leases, some Property Owners testified they signed without reading them first. A party's decision "not to read the agreement does not relieve [that party] of [the] obligations incurred by * * * signing." *Robbins*, 7th Dist. No. 04 BE 43, ¶34. It is a fundamental legal principle that one may not "enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." *McAdams v. McAdams*, 80 Ohio St. 232, 240-241, 88 N.E. 542 (1909), quoting *Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875). In other words, "[t]he legal and common-sensical axiom that one must read what one signs survives[.]" *ABM Farm*s, 81 Ohio St.3d at 503.

{¶46} Other Property Owners testified they read the provision and did not understand it, but conceded they could have consulted with counsel or other advisors, yet chose not to do so. For example, the following testimony was adduced: "Q. So you and your wife specifically discussed, should we take this to a lawyer and decided not to * * * A. Yeah, we talked about it, we mentioned it to each other." "Q. * * * You could have also consulted with an attorney if you chose to do so if you had a question about the lease? A. I could have." "Q. Okay. I understand you did not [contact an

attorney]. But you could have contacted someone if you wanted to ask further questions? A. We could have, yes, sir. Q. But you just chose not to? A. Being trustful [sic], that's all I chose to do. Yes."

{¶47} Still others, although a minority, did some due diligence before signing. A few actually consulted with legal counsel. One Property Owner called around to different oil and gas companies to see if he could get a better deal elsewhere. All these considerations weigh against procedural unconscionability.

{¶48} Further, the trial court's determination that the oil and gas leases at issue herein were procedurally unconscionable insofar as they were "contracts of adhesion" is unsupported by the record. A contract of adhesion is "a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract term." *Taylor Bldg. Corp. of Am.* 117 Ohio St.3d 352, at ¶49, citing Black's Law Dictionary (8th Ed.2004) 342.

{¶49} Here, although a form contract was utilized, Property Owners were given ample opportunity to review it and propose any revisions, and in fact, some did. There was evidence introduced at the hearing that several of the leases were in fact modified pursuant to negotiations: one Property Owner negotiated and received a higher delay rental with Patriot; another negotiated for the inclusion of a provision protecting his well water. The fact that no Property Owner requested modification of the arbitration clause specifically does not transform the agreements into contracts of adhesion.

{¶50} In sum, the evidence weighs against procedural unconscionability. Since both substantive and procedural unconscionability must be met, the trial court erred in determining that the arbitration clause was unconscionable. Accordingly, Patriot and Chesapeake's sole assignment of error is meritorious.

### Conclusion

{¶51} Patriot and Chesapeake's arguments are meritorious. While the trial court correctly concluded that the arbitration provision is substantively unconscionable, the trial court erred by concluding that the arbitration clause is procedurally unconscionable. Although none of the Property Owners had any past training in oil

and gas leases, many had executed oil and gas leases in the past; were given time to review these leases and ask questions prior to signing, some proposing amendments to the leases. Some simply did not read the leases including the arbitration provision or did not understand the arbitration clause, but conceded they could have sought outside counsel before signing and chose not to do so. In order for an arbitration provision to be held unconscionable, both substantive and procedural unconscionability must be present. Because the Property Owners only demonstrated that the arbitration clause was substantively unconscionable, the arbitration clause is deemed valid. Accordingly, the judgment of the trial court is reversed and the matter stayed pending arbitration.

Vukovich, J., concurs.

Waite, J., dissents, see dissenting opinion.


Waite, J., dissenting.

{¶52} I must dissent from the majority opinion in this case. After review, I conclude that the trial court did not abuse its discretion in refusing to send the case to arbitration. Also, at a minimum, the delay rental question must be heard by the court and not by an arbitrator. These two points will be treated separately. First, I believe that the majority mistakenly concludes the arbitration clause was not procedurally unconscionable, improperly rejecting the trial court's findings. It is long settled that: "The doctrine of unconscionability exists to prevent oppression and unfair surprise. 'Oppression' refers to burdensome or punitive terms of a contract, whereas 'unfair surprise' refers to unconscionability in the formation of the contract, where one of the parties is overborne by superior bargaining power or is otherwise unfairly induced into entering into the contract." *Schamer v. Western & Southern Life Ins. Co.*, 1st Dist. No. C-040057, 2004-Ohio-4249, ¶16. The trial court articulated that unfair surprise defines the essence of a procedurally unconscionable contract provision, and I see no reason to reverse the trial court's conclusion that the arbitration clause was both substantively and procedurally unconscionable.

{¶53} The "surprise" element includes much more than the size of the font used to give notice of the arbitration clause. It primarily refers to the question of whether the parties ever had a contract in the first place, particularly when crucial contract terms were never negotiated or agreed upon, or most importantly, never even appear in the contract. In this case, the arbitration clause merely contains the declaration that the parties will use the "Rules of the American Arbitration Association." A cursory examination of the American Arbitration Association ("AAA") website presents a list of *seventy-four sets of rules*. *See* http://www.adr.org/aaa/faces/rules. One of the first that appears is "Non-binding arbitration rules for consumer disputes and business disputes." Is this the set of rules that is to be applied? Did the parties agree? Did the parties ever discuss this matter?

{¶54} The trial court noted that there was no meeting of the minds as to whether binding or non-binding rules would apply, but the majority rejects this ambiguity out of hand with a citation to *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 590 N.E.2d 1242 (1992). *Schaefer* was a plurality decision and has no clear majority holding that could apply in the instant appeal. The main point that can be gleaned from *Schaefer* is that an arbitration clause that provides for something other than a final and binding result is not the type of arbitration described in R.C. 2711.01. This sort of arbitration clause cannot be enforced under the statutory rules governing arbitration. *Id.* at 716. In the instant appeal, the generic reference to the "Rules of the American Arbitration Association" may refer to both binding and non-binding arbitration alternatives. Thus, my reading of *Schaefer* leads to the inescapable conclusion that the arbitration clause was unenforceable pursuant to *Schaefer*, not that the parties should be referred to arbitration pursuant to *Schaefer* as the majority declares.

{¶55} To compound the ambiguity of the arbitration clause in this case, the AAA also has a specific and distinct set of rules that applies to real estate disputes. Since a mineral lease is a real estate transaction, it can be argued that those rules should apply. AAA presents yet another set of rules for resolving disputes through a

judicial settlement conference. We cannot determine whether these rules may have been intended to apply. There are various sets of rules for resolving consumer disputes with businesses that could also conceivably apply. There may be other sets of AAA rules that also apply: the parties never specifically agreed to use or exclude any of them. The majority assumes that the commercial rules apply, but the commercial rules are specific as to exactly what an arbitration clause must contain if these rules apply:

> The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:
>
> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association *under its Commercial Arbitration Rules*, * * *. [Emphasis added.]

*See* Commercial Arbitration Rules and Mediation Procedures (Including Procedures for Large, Complex Commercial Disputes), at http://www.adr.org/aaa/faces/rules.

{¶56} The arbitration clauses in this appeal do not follow the standard language and do not refer to the commercial arbitration rules. The ambiguity or lack of agreement as to which rules apply is only one aspect evidencing the surprise element in the arbitration clause. As the majority points out, the arbitration clause misstates or contradicts the Commercial Arbitration Rules governing the initiation of the arbitration process. It is also silent about the enormous costs that may be involved in filing for arbitration, particularly when a large mineral lease is involved.

{¶57} While there is a strong public policy argument favoring arbitration, this is not identical to a public policy in favor of all of the rules of the AAA. Courts have regularly found the fee structure of the AAA, or similar types of oppressive fee requirements, to be unconscionable. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464,

700 N.E.2d 859 (1998); *Brunke v. Ohio State Home Servs.*, 9th Dist. No. C. A. No. 08CA009320, 2008-Ohio-5394. The majority cites *Rude v. NUCO Edn. Corp.*, 9th Dist. No. 25549, 2011-Ohio-6789, for the principle that the fees associated with arbitration could render an arbitration clause substantively unconscionable, and in this same case the court also holds that failure to include the fee structure in the arbitration clause renders the clause procedurally deficient as well: "whether the students read the clause thoroughly before signing or within the five-day cancellation period is 'ultimately inconsequential in this particular case ... [because, as discussed below,] nothing on the face of the [arbitration] clause could have put [them] on notice of excessive, prohibitive costs associated with the arbitration.' *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161 at ¶54. The arbitration provision is procedurally unconscionable as applied to these students." *Id.* at ¶17.

{¶58} There are many aspects of this arbitration clause that look to be procedurally unconscionable, and we could rely on any one of them as a basis for affirming the trial court's judgment on that particular issue. Thus, I would simply affirm the trial court's judgment based on the valid reasons cited by the trial judge in its judgment entry.

{¶59} Even if I were to agree with the majority that the arbitration clause is enforceable, I must nevertheless conclude that the delay rental issue may not properly be sent to arbitration. Arbitration clauses "do not apply to controversies involving the title to or the possession of real estate." R.C. 2711.01(B)(1). *See Blanchard Valley Health Sys. v. Canterbury Holdings, Inc.*, 3d Dist. No. 5-12-08, 2012-Ohio-5134, ¶15. In this particular case, the claim that Appellants failed to pay delay rentals was presented as a possession action. Appellees were not trying to collect unpaid rentals. Instead, they sought a declaration from the court that they had a right to repossess their property when delay rentals were not paid.

{¶60} Delay rentals are not rental payments in the tradition sense, but rather, are seen as a recurring advance payment allowing the oil company or driller the right

to delay drilling on the land for a limited time period, usually twelve months. *East Ohio Gas v. Duncan*, 63 Ohio App.2d 163, 410 N.E.2d 769 (9th Dist.1978). Under the usual delay rental language, a lease automatically terminates if the delay rental fee is not paid in full and on time. 3 Kuntz, *The Law of Oil and Gas*, Section 29.2[c] (2012).

{¶61} The payment of delay rentals is not generally treated as an obligation of the lessee. They are, instead, seen as an option available to the lessee, and the failure to pay delay rentals does not usually give rise to a breach of contract action under Ohio law. *Van Etten v. Kelly*, 66 Ohio St. 605, 611, 64 N.E. 560 (1902). Delay rental clauses typically state that the lease will automatically terminate and become null and void "unless" delay rentals are paid or "unless" drilling commences. The leases in this appeal contain this type of language.

{¶62} The following case, although not from Ohio, explains the origin and effect of an "unless clause" as part of the delay rental provisions in oil and gas leases:

> The courts generally hold that a lease containing an "unless" clause terminates automatically upon the failure of the lessee to make a full payment of the delay rental. The "unless" clause was developed to allow the lessee under an oil and gas lease to terminate the obligation to drill or pay delay rentals where no oil and gas were found on the property subject to the lease. Summers, Oil and Gas, Vol. 2, s 334 (1980). The clause allows the lessor to receive delay rentals in the absence of exploration operations. The policy of strictly construing the "unless" clause has been followed even though harsh results may occur. Similarly, the rule of automatic termination of a lease containing an "unless" clause has been applied with equally harsh results. Williams, Oil and Gas Law, Vol. 3, s 606.2 (1980).

*Norman Jessen & Associates, Inc. v. Amoco Production Co., Denver, Colo.*, 305 N.W.2d 648, 651 (N.D.1981).

**{¶63}** Turning back to Ohio law, the key cases on this topic are over one hundred years old, and the basic understanding of the effect of failure to continue paying delay rentals has not changed over the years:

> As the only monthly rental provided for in the lease is that found in this 'unless' clause, and as that rental is to prevent the lease from becoming null and void, it seems fairly clear that the subsequent understanding that the monthly rental should apply to any well or wells not completed as therein specified, is for the same purpose, that is, to prevent the lease from becoming null and void, and that upon failure to pay such monthly rental in advance while the completion of any well was so delayed, the lease by its terms became null and void, and the lessor had the option to so treat the lease, and recover possession, * * * *she could not recover rentals for breach of contract to complete wells, because there is no agreement to pay rentals for such breach, and there being no such agreement, there can be no breach thereof.* (Emphasis added.)

*Van Etten*, *supra*, 66 Ohio St. at 611, 64 N.E. 560. *See also*, *Brown v. Fowler*, 65 Ohio St. 507, 63 N.E. 76 (1902); *Dickerhoff v. Cameron*, 41 Ohio App. 430, 180 N.E. 72 (9th Dist.1931); *East Ohio Gas v. Duncan*, 63 Ohio App.2d 163, 410 N.E.2d 769 (9th Dist.1978); *Tisdale v. Walla*, 11th Dist. No. 94-A-0008, 1994 WL 738744 (Dec. 23, 1994).

**{¶64}** While Appellees' complaint placed the delay rental issue under the

general heading of "breach of contract" claims, the actual cause of action they allege is that Appellees have a right to regain possession of their leaseholds because the leases terminated automatically when payment of delay rentals ceased. (4/12/12 Amended Complaint, p. 15.) When determining whether a court has jurisdiction over a claim, it does not look to the label or caption, but rather, at the substance of the complaint. *State ex rel. The Illuminating Co. v. Cuyahoga Cty. Court of Common Pleas*, 97 Ohio St.3d 69, 2002-Ohio-5312, 776 N.E.2d 92, ¶21. The relief being requested as a result of the cessation of delay rentals is not a money judgment for unpaid rentals. It is a declaration from the court that the lease has expired by its own terms. (4/12/12 Amended Complaint, p. 19.) Appellees have alleged a proper possession action premised on the failure of the lessee to pay delay rentals. A possession action cannot properly be sent to arbitration, and thus, should be exempt.

{¶65} There is some confusion in the record as to the status of the delay rental cause of action. At the time the judgment entry under review in this appeal was filed, there was a claim for repossession of Appellees' property for failure to pay delay rentals. This was included in Appellees' amended complaint, and Appellees filed a motion for summary judgment on this claim. The trial court, though, asked Appellees to resubmit the delay rental claim as part of another amendment to the complaint. It is not clear from the record as to the current status of that claim, but because there was a properly filed cause of action based on failure to pay delay rentals at the time the trial court issued its judgment, it is properly reviewed on appeal.

{¶66} One final aspect of the delay rental issue that I would address is whether any of the remaining claims should be submitted to arbitration until the delay rental issue is resolved, assuming these remaining claims should be arbitrated at all. Some of Appellees' remaining claims are dependent on the existence of a valid contract at a certain point in time, such as claims that the leases were improperly assigned or claims involving improprieties in the process of renewing the leases in 2010. Obviously, if the leases had already terminated due to the failure to pay delay rentals, then questions about the assignment or renewal of the leases would be moot. The

nature and amount of damages arising from the remaining claims would likely be significantly, perhaps drastically, altered by the results of the possession action. This additional quandary only reinforces my conclusion that none of these claims should go to arbitration, whether by reason of the invalidation of the arbitration clause or because the arbitration claims are dependent on the results of the possession action. As I see it, this case falls under the line of cases that have refused to submit claims to arbitration until the trial court resolves all non-arbitratable claims, because "[u]ntil such a determination is made, there is nothing to arbitrate." *Slusher v. Ohio Valley Propane Servs.*, 177 Ohio App.3d 852, 2008-Ohio-41, 896 N.E.2d 715, ¶26 (4th Dist.).

{¶67} For all the aforementioned reasons, I dissent from the majority Opinion and I would affirm the judgment of the trial court.